UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ELISHA L. GRESHAM,

     Plaintiff,

v.                         Case No.:  8:21-cv-601-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**OPINION AND ORDER**

     Plaintiff Elisha L. Gresham filed a Complaint on March 16, 2021.  (Doc. 1).

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("SSA") denying her claim for a period of disability and

disability insurance benefits.  The Commissioner filed the transcript of the

administrative proceedings (hereinafter referred to as "Tr." followed by the

appropriate page number), and the parties filed a joint memorandum detailing their

respective positions.  (Doc. 22).  For the reasons set forth herein, the decision of the

Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42

U.S.C. § 405(g).

## I.    Social Security Act Eligibility

     The law defines disability as the inability to do any substantial gainful activity

by reason of any medically determinable physical or mental impairment that can be

expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.      Procedural History

Plaintiff filed an application for a period of disability and disability insurance benefits on July 22, 2015, alleging a disability onset date of May 20, 2015.  (Tr. at 13).[1]  Plaintiff's claim was denied initially on November 4, 2015, and upon reconsideration on March 21, 2016.  (*Id*.).  Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), and ALJ Steven L. Butler held that hearing on October 12, 2017.  (*Id*. at 94-146).  ALJ Butler issued an unfavorable decision on January 4, 2018.  (*Id*. at 172-91).  The Appeals Council granted Plaintiff's request for review on April 15, 2019, and remanded the decision to the ALJ to (1) obtain more evidence concerning Plaintiff's impairments to complete the administrative record; (2) either obtain an Appointment of Representative form from

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations, however, do not apply in Plaintiff's case because Plaintiff filed her claim before March 27, 2017.

each of Plaintiff's representatives or, if Plaintiff was proceeding *pro se*, give her

information on her right to representation; (3) further consider evidence submitted

less than five business days before the scheduled hearing; and (4) if warranted, give

more consideration of Plaintiff's residual functional capacity ("RFC") during the

relevant time period and provide a rationale with specific references to the evidence

of record in support of the RFC.  (*Id.* at 192-94; *see also* Doc. 13-14).

On remand, ALJ Anthony Reeves held a second hearing on December 17,

2019, at which Plaintiff appeared without representation.  (*Id.* at 36-93).  ALJ Reeves

issued an unfavorable decision on March 30, 2020.  (*Id.* at 10-35).  On January 26,

2021, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-6).  Plaintiff

then filed her Complaint with this Court on March 16, 2021, (Doc. 1), and the

parties consented to proceed before a United States Magistrate Judge for all

purposes, (Docs. 13, 16).  The matter is, therefore, ripe for the Court's review.

**III.**      **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine if a

claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x

890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

An ALJ must determine whether the claimant:  (1) is performing substantial gainful

activity; (2) has a severe impairment; (3) has a severe impairment that meets or

equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix

1; (4) can perform her past relevant work; and (5) can perform other work of the sort

found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th

Cir. 2004). The claimant has the burden of proof through step four and then the

burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511

F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the insured status requirements of the

Social Security Act through December 31, 2020. (Tr. at 16). At step one of the

sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since May 20, 2015, the alleged onset date. (*Id.*). At step two, the

ALJ determined that Plaintiff has the following severe impairments: "obesity,

degenerative disc disease of the lumbar spine, and left DeQuervain's tenosynovitis

(20 [C.F.R. §] 404.1520(c))." (*Id.*). At step three, the ALJ determined that Plaintiff

did "not have an impairment or combination of impairments that me[t] or medically

equal[ed] the severity of one of the listed impairments in 20 [C.F.R.] Part 404,

Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, and 404.1526)." (*Id.*).

At step four, the ALJ found that Plaintiff has the RFC:

> to perform light work as defined in 20 [C.F.R. §]
> 404.1567(b) except she can lift and carry 20 pounds
> frequently and 50 pounds occasionally, sit for 2 hours at a
> time for a total of 4 hours out of an 8-hour workday, stand
> 30 minutes at a time for a total of 2 hours out of an 8-hour
> workday, and walk 30 minutes at a time for a total of 2
> hours in an 8-hour workday. The claimant can frequently
> reach in all directions bilaterally with the upper extremities.
> She can occasionally climb stairs and ramps, occasionally
> climb ladders or scaffolds, frequently balance, and never
> stoop, kneel, crouch, or crawl. The claimant can tolerate
> occasional exposure to unprotected heights and moving
> mechanical parts. She can tolerate very loud noise.

4

(*Id.* at 17).  The ALJ also determined that Plaintiff "is capable of performing past relevant work as a Purchasing Agent and Administrative Assistant" because "[t]his work does not require the performance of work-related activities precluded by the claimant's [RFC] (20 [C.F.R. §] 404.1565)."  (*Id.* at 23).

Despite finding that Plaintiff could perform her past relevant work, the ALJ made alternative findings at step five.  (*Id.* at 24).  More specifically, considering Plaintiff's age, education, work experience, and RFC, and in reliance on Vocational Expert ("VE") testimony, the ALJ determined that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform (20 [C.F.R. §§] 404.1569, 404.1569(a) and 404.1568(d))"—*i.e.*, router (Dictionary of Occupational Titles ("DOT")# 222.587-038); fingerprint clerk (DOT# 209.367-026); and microfilm mounter (DOT# 208.685-022).  (*Id.* at 24).

For these reasons, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from May 20, 2015, through the date of this decision (20 [C.F.R. §] 404.1520(f))."  (*Id.* at 25).

## IV.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## V.    Analysis

On appeal, Plaintiff raises two issues. As stated by the parties, the issues are:

1.    Whether the ALJ properly evaluated the medical opinion evidence in accordance with SSA policy and Eleventh Circuit precedent; and

2.    Whether the ALJ and [Appeals Council] judges were properly appointed and, if not, whether this fact requires remand.

(Doc. 22 at 15, 33). The Court finds it appropriate to address the issues in a more logical order. Accordingly, the Court first addresses the parties' second issue—

whether the decision here is constitutionally defective, requiring remand.  Next, the Court considers the parties' first issue—whether the ALJ properly evaluated the medical evidence of record.

### A.    Whether 42 U.S.C. § 902(a)(3) Necessitates a Rehearing.

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision").  Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause.  *See* 42 U.S.C. § 902(a)(3).

Plaintiff essentially argues that the § 902(a)(3) removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the separation of powers, and, therefore, the SSA's structure is constitutionally invalid. (*See* Doc. 22 at 33-35 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020))).  To that end, Plaintiff impliedly asserts that Commissioner Andrew Saul was subject to the removal provision's allegedly unconstitutional tenure protection and, thus, any actions taken by him or pursuant to his authority were unconstitutional.  (*See id.*).  For example, Plaintiff argues that, because Commissioner Saul delegated his authority to the ALJ who issued a decision in Plaintiff's case and to the Appeals Council Judges, Plaintiff's claim was adjudicated by individuals who "had no lawful authority to do so."  (*See id.* at 34-35 (citations omitted)).  Plaintiff also asserts that her claim was decided under "a presumptively inaccurate legal standard" because Commissioner Saul issued regulations under which Plaintiff's application was decided.  (*Id.*).

7

The Commissioner "*agree[s]* that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," (*id.* at 35 (emphasis added) (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal provision necessitates a remand of Plaintiff's case, (*id.* at 35-36 (citation omitted)). Specifically, the Commissioner contends that Plaintiff cannot show a nexus between 42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff. (*See id.* at 36-44 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021))).

The Commissioner raises two arguments in support of this contention.  First, the Commissioner argues that because ALJ Reeves served under a ratification of his appointment by former Acting Commissioner Nancy Berryhill, there was no connection between ALJ Reeves's decision and the removal provision.  (*See id.* at 38-39 (citations omitted)).  Because Acting Commissioner Berryhill was not subject to any tenure protection under 42 U.S.C. § 902(a)(3), the Commissioner asserts that any potential nexus between the removal provision and the decision in Plaintiff's case was severed.  (*See id.*).  Second, even if Plaintiff's case were decided under the authority of a Commissioner subject to the removal provision, the Commissioner argues that Plaintiff "cannot show that the removal restriction 'inflict[ed] compensable harm' on her."  (*Id.* at 40-44 (alteration in original) (citing *Collins*, 141 S. Ct. at 1789)).

The Commissioner next argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, (*id.* at 44-45 (citations omitted)), the *de facto* officer doctrine, (*id.* at 45-46 (citations omitted)), the rule of necessity (*id.* at 46-47 (citations omitted)), and broad prudential considerations, (*id.* at 47-48 (citations omitted)).

By way of reply, Plaintiff addresses several arguments posited by Defendant. (*See id.* at 48-56). First, Plaintiff argues that under *Collins v. Yellen*, 141 S. Ct. 1761, 1778-89 (2021), unconstitutional removal restrictions implicate separations of powers. (*Id.* at 48-49 (citations omitted)). Second, Plaintiff maintains that she was harmed by the provision because but for the delegation of authority, (1) the Appeals Council could not have issued adverse determinations and (2) she would not have faced a constitutionally illicit adjudication process at the Appeals Council level. (*Id.* at 27-28). In advancing this argument, Plaintiff summarizes the President's actions and statements immediately following the Office of the Legal Counsel of U.S. Department of Justice's issuance of the memorandum on the Constitutionality of the Commissioner of Social Security's Tenure Protection, to show that the President would have removed Former Commissioner Saul had the President thought he had the authority to do so. (*See id.* at 49-53). Third, Plaintiff contends that the alleged unconstitutional provision cannot be deemed harmless under law or fact and that remand would remedy some harms Plaintiff has suffered. (*Id.* at 53 (citation omitted)). Fourth, Plaintiff argues that the *de facto* officer doctrine does not apply to basic constitutional protections. (*Id.* at 54 (citations omitted)). Fifth, Plaintiff asserts

that the rule of necessity should not apply because "the government cannot claim necessity arising from its own sustained, brazen unconstitutional actions and inactions over more than a quarter century." (*Id.* at 54). Finally, Plaintiff argues that the "SSA's invitation to make up law in the guise of 'prudential considerations'" lacks merit because remand given the tenure provision would apply to only a few claimants. (*Id.* at 54-55). Plaintiff further maintains that what the SSA actually seeks in relying on the so-called prudential considerations "is a ruling that it 'lawfully' violated the Constitution in the past and can continue to do so in the future." (*Id.* at 55).

On June 29, 2020, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the United States Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's ("CFPB") director violated constitutional separation of powers, but that the removal provision was severable such that the other provisions relating to the CFPB's structure and duties "remained fully operative without the offending tenure restriction." *Seila L. LLC*, 140 S. Ct. at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Thereafter, on June 23, 2021, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the United States Supreme Court held that the Federal Housing Finance Agency ("FHFA") director's statutory for-cause removal protection was similarly unconstitutional. *Collins*, 141 S. Ct. at 1783. The Court also distinguished the

unconstitutional removal provision in *Collins* from similar appointment provisions,

*see, e.g.*, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), noting that:

> All the officers who headed the FHFA during the time in question were properly *appointed*.  Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office.  As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.

*Id.* at 1787 (emphasis in original).  The Court did not, however, rule out the potential

that an unconstitutional removal provision could "inflict compensable harm."  *Id.* at

1788-89.  To that point, the *Collins* Court listed examples of how compensable harms

might be identified, stating:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal.  Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way.  In those situations, the statutory provision would clearly cause harm.

*Id.*

In this matter, the Commissioner agrees with Plaintiff that 42 U.S.C.

§ 902(a)(3) is unconstitutional because it violates the separation of powers.  (Doc. 22

at 35 (citing Constitutionality of the Commissioner of Social Security's Tenure

Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))).  However, despite

the parties' agreement, the Court need not determine the constitutionality of 42

11

U.S.C. § 902(a)(3)'s removal provision.  In short, even assuming *arguendo* that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff. Accordingly, the Court assesses whether the removal provision necessitates a rehearing of Plaintiff's claim, assuming *arguendo* that the provision is unconstitutional.

Plaintiff essentially contends that the allegedly unconstitutional nature of section 902(a)(3) automatically voids the ALJ's decision in this case.  (*See* Doc. 22 at 33-35).  On the other hand, the Commissioner raises a host of arguments as to why Plaintiff's rehearing request should be denied.  (*See id.* at 35-48).

Here, the Court agrees with the Commissioner's arguments and finds a rehearing is not required based solely on the allegedly unconstitutional removal provision for two reasons:  (1) the removal provision is severable from the remainder of the Social Security Act; and (2) Plaintiff has failed to show how the allegedly unconstitutional removal provision harmed her.

The Court in *Seila Law* noted that "one section of a statute may be repugnant to the Constitution without rendering the whole act void."  *See Seila L. LLC*, 140 S. Ct. at 2208.  Based on this principle, the Court is not persuaded by Plaintiff's broad argument that 42 U.S.C. § 902(a)(3)'s removal provision divests the Commissioner of all authority under the Social Security Act or renders *all* of the Commissioner's actions "presumptively inaccurate."  (*See* Doc. 22 at 33-35).  Rather, like the

offending provision in *Seila Law*, the Court finds that 42 U.S.C. § 902(a)(3) can be severed from the remainder of the Act because the SSA can continue to fully function without the presence of the allegedly unconstitutional provision.  *See Seila L. LLC*, 140 S. Ct. at 2209; *see also Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *5 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted,* 2022 WL 61217 (M.D. Fla. Jan. 6, 2022) (citations omitted) (finding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted based, in part, on its severability from the remainder of the Act).  Thus, the Court finds that remand for a rehearing on this issue is not warranted.

Moreover, while the *Collins* Court recognized the potential that an unconstitutional removal provision could "inflict compensable harm," *see Collins*, 141 S. Ct. at 1788-89, the Court has found no evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff.  For example, Plaintiff has not shown that the President could not remove Mr. Saul as a result of the alleged unconstitutional tenure, undermining the existence of a nexus between the provision and the unfavorable decision.  To the extent Plaintiff attempts to show that the President's actions and statements following the issuance the memorandum on the Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021) demonstrate that the President was dissatisfied with the Former Commissioner or would have removed the Former Commissioner if the President believed he had the authority to do so, (*see* Doc. 22 at 49-53), the argument is wholly speculative.  Additionally,

Plaintiff fails to show that absent the alleged unconstitutional provision, Plaintiff's claim would have been decided differently at either the ALJ or the Appeals Council level.  Indeed, Plaintiff has pointed to no portion of either the ALJ's decision or the decision of the Appeals Council that she contends would have been decided differently but for the alleged unconstitutional provision.  Finally, Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill.  Because former Acting Commissioner Berryhill was not subject to 42 U.S.C. § 902(a)(3)'s tenure protection, any argument that a nexus exists between § 902(a)(3) and a compensable harm to Plaintiff is further strained.

Furthermore, while the United States Supreme Court has not addressed this issue directly, Justice Kagan forecasted its outcome in *Collins*:

> [T]he majority's approach should help protect agency decisions that would never have risen to the President's notice.  Consider the hundreds of thousands of decisions that the [SSA] makes each year.  The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block . . . [b]ut given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.  That makes sense. . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*See id.* at 1802 (Kagan, J., concurring).  Justice Kagan's reasoning supports the Court's conclusion that there is no evidence in the instant case to suggest that a nexus exists between § 902(a)(3) and any compensable harm to Plaintiff.

For these reasons, even assuming *arguendo* that 42 U.S.C. § 902(a)(3)'s removal provision is unconstitutional, the Court finds that the removal provision does not necessitate remand or a rehearing of Plaintiff's claim.  *See Seila L. LLC*, 140 S. Ct. 2183; *Collins*, 141 S. Ct. 1761; *see also Tibbetts*, 2021 WL 6297530, at *5, *report and recommendation adopted,* 2022 WL 61217 (holding that remand based on the allegedly unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4 (M.D. Fla. Nov. 23, 2021) (finding that a plaintiff had failed to state a claim upon which relief could be granted because the plaintiff could not establish that the Acting Commissioner's unconstitutional tenure protection caused compensable harm).

### B.    Whether the ALJ Properly Evaluated the Medical Evidence of Record.

Plaintiff also asserts that the ALJ did not provide good reasons for rejecting opinion evidence that contradicted his RFC finding.  (Doc. 22 at 17).  Specifically, Plaintiff challenges the weight that the ALJ afforded to (1) Dr. Krasner's opinions, (2) Dr. Lifrak's opinion, (3) Dr. Wynn's opinions, and (4) the Functional Assessment Report completed by Plaintiff's physical therapy center.  (*See id.* at 17-33).

As to Dr. Krasner's opinions, Plaintiff argues that the ALJ "never obviously considered" Dr. Krasner's status as a treating source when assessing his opinions at step four because the ALJ only identified Dr. Krasner as a treating source at step three.  (*Id.* at 17-18).

As to the opinions of Dr. Krasner, Dr. Lifrak, and Dr. Wynn and the Functional Assessment Report, Plaintiff maintains that the ALJ erred in assessing the opinions "in isolation from each other without recognizing that they support and are consistent with each other." (*Id.* at 18 (emphasis omitted)).  More particularly, Plaintiff contends that because the opinions of Dr. Krasner, Dr. Lifrak, and Dr. Wynn are consistent with other evidence of record and with each other, the ALJ erred in giving the opinions less than controlling weight.  (*See id.* at 20-21).  In presenting this argument, Plaintiff challenges the records cited by the ALJ, arguing that the specific records in fact support Plaintiff's position.  (*See id.* at 21-22 (citations omitted)).  Ultimately, Plaintiff maintains that while some records show normal examinations and improvement, the limited examples cannot "devalue the weight of treating and examining medical opinions and an independent functional evaluation" and that "the ALJ's failure to acknowledge and address evidence contradicting his findings demonstrates [his] unjustified reliance on a highly selective portion of the evidence." (*Id.* at 22-23).

As to the Functional Assessment Report, Plaintiff argues that the ALJ's reason for affording the report limited weight—that the examiner was not able to fully assess Plaintiff's abilities due to Plaintiff's recent surgery—lacks merit because the purpose of the Functional Assessment Report is to evaluate Plaintiff's ability to perform work related activities.  (*Id.* at 19-20).  In essence, Plaintiff contends that the limitations imposed by the Functional Assessment Report speak directly to Plaintiff's RFC.  (*See id.*).  Plaintiff also argues that the opined restrictions have been in place

since at least November 2015, as shown by Dr. Krasner's opinions.  (*Id.* at 19 (citing Tr. at 860, 870, 929, 1146, 1529)).

Finally, Plaintiff argues that if the ALJ had questions regarding Plaintiff's functional limitations, he had several options to resolve the questions, including re-contacting Plaintiff's physicians, returning the expanded case record to the State Agency for an updated review, or obtaining testimony from a medical expert.  (*Id.* at 23 (citations omitted)).  Plaintiff essentially contends that setting aside the treating physicians' opinions, however, was not an appropriate action under these facts and remand is, therefore, warranted.  (*See id.* at 23-24).

In response, Defendant argues that substantial evidence supports the ALJ's RFC finding, including his consideration of the medical evidence.  (*Id.* at 24-26).  Accordingly, Defendant argues that substantial evidence supports the RFC finding.  (*Id.* at 26).

Turning to Plaintiff's specific contentions, Defendant first argues that the ALJ properly considered the opinions of Dr. Krasner but ultimately found that certain opinions contradicted others, some opinions were on issues reserved to the Commissioner, and the remaining opinions were not consistent with other evidence of record.  (*Id.* at 27-29).  Thus, Defendant maintains that the ALJ provided good cause for assigning less than controlling weight to Dr. Krasner's opinions.  (*Id.* at 29).  Second, Defendant argues that the ALJ provided good cause for rejecting Dr. Wynn's opinions because the opinions were not consistent with the evidence of record or otherwise did not constitute medical opinions.  (*Id.* at 29-30).  Third,

Defendant contends that the ALJ did not err in assessing Dr. Lifrak's opinion because Dr. Lifrak was not a treating source, the ALJ found the lifting restriction to be inconsistent with evidence of record, and the RFC otherwise provided greater limitations than opined.  (*Id.* at 30-31).  Fourth, as to the Functional Assessment Report, Defendant asserts that the report does not constitute a medical opinion because it is unsigned.  (*Id.* at 31).  Defendant nevertheless maintains that even if it were construed as an opinion, the ALJ properly found it to be entitled to limited weight for the reasons proffered.  (*Id.*).  Finally, Defendant argues that although the opinions may be consistent with each other, the ALJ did not err in finding each to be unsupported by the record.  (*See id.* at 31-32).

Defendant further contends that the ALJ did not err in deciding not to re-contact a medical source because such a determination is in the ALJ's discretion and limited as to its application.  (*Id.* at 32).  Defendant maintains that an ALJ's decision to discount opinions – even from treating sources – does not trigger a duty to re-contact the physicians.  (*Id.*).  Defendant nevertheless notes that the ALJ solicited the opinion of a medical expert and assigned great weight to the opinion.  (*Id.* at 33).

In sum, Defendant argues that "the ALJ applied the correct legal standards, and substantial evidence supports the ALJ's finding that Plaintiff is not disabled" and that the Court should not reweigh the evidence to reach the opposite conclusion.  (*Id.*).

The relevant Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect

judgments about the nature and severity of impairments, including symptoms, diagnoses, and prognoses, what a claimant can still do despite impairments, and physical or mental restrictions.  20 C.F.R. § 404.1527(a)(2).  When evaluating a medical opinion, the ALJ considers various factors, including:  (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization.  *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion.  *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).  Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion.  *See id.* Nonetheless, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings.  *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

The Eleventh Circuit has further held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Good cause exists when:  (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Id.*  Moreover, an "ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

Because Plaintiff limits her arguments to the assessment of the Functional Assessment Report and the opinions of Dr. Krasner, Dr. Wynn, and Dr. Lifrak, the Court considers only those opinions.

As to the ALJ's assessment of the Functional Assessment Report, the Court finds it to be supported by substantial evidence.  As noted above, an ALJ is required to state with particularity the weight given to each *medical opinion* and the reasons therefor.  *Winschel*, 631 F.3d at 1179.  Under the pertinent regulations, "[m]edical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(2).  Here, the unsigned document does not provide sufficient

information to show that the report was that of an acceptable medical source. *See Matos v. Colvin*, No. 6:14-cv-1396-Orl-DAB, 2015 WL 5474486, at *4 (M.D. Fla. Sept. 17, 2015) (noting that an unsigned document did not show whether it was an opinion of an acceptable medical source). Moreover, physical therapists – the source most likely to have drafted this report – do not constitute "acceptable medical source[s]" under the pertinent regulations. *See Sears v. Comm'r of Soc. Sec.*, No. 8:14-cv-2635-T-17JSS, 2016 WL 11581678, at *4 (M.D. Fla. Jan. 20, 2016); *see also* SSR 06-03p, 2006 WL 2329939, at *2 (describing "[m]edical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists"). Thus, the Court finds that neither Plaintiff nor the report itself has shown that the report constitutes a medical opinion. As a result, the report is not entitled to controlling weight. *See Freeman v. Barnhart*, 220 F. App'x 957, 961 (11th Cir. 2007) (noting the opinion of the physical therapist "is entitled to less weight than the opinions of the medical doctors because he is a physical therapist").

Nevertheless, the ALJ did not impermissibly reject the opinion outright. (*See* Tr. at 22). Instead, the ALJ considered the opinion and found it to be entitled to "limited weight . . . because the examiner was unable to fully assess the claimant's ability because she was on restrictions from a recent surgery." (*Id.*). Upon review, the Court finds the reason to be supported by substantial evidence. Indeed, the author of the report explicitly noted that he or she was "[u]nable to fully determine all barriers that will *remain* as [Plaintiff] is on *temporary* restrictions from recent

surgery." (*Id.* at 1541 (emphasis added)).  Because the law requires that a disability either be expected to result in death or have lasted or be expected to last for a continuous period of at least twelve months, 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905, the Court finds the ALJ's reliance on the temporariness of Plaintiff's additional restrictions to be appropriate, (*see* Tr. at 22).  Thus, the Court finds that substantial evidence supports the ALJ's finding.  The Court, therefore, finds no error in the ALJ's assessment of the Functional Assessment Report.

As to Dr. Wynn's opinion that Plaintiff was released to perform her normal duties up to her capacity, the ALJ found the opinion to be entitled to no weight because it did not provide specific functional limitations.  (*Id.* (citing Tr. at 1701)).  The Court finds this determination to be supported by substantial evidence.  In that regard, the opinion states only that Plaintiff may "perform normal duties up to her capacity."  (*Id.* at 1701).  Such a statement does not adequately provide the ALJ with an ability to assess what Plaintiff can still do despite her impairments.  (*See id.*); *see also* 20 C.F.R. § 404.1527(a)(2).  Put simply, nothing in the statement clarifies what Plaintiff's "capacity" was at the time.  (*See* Tr. at 1701).  Thus, the statement cannot constitute a medical opinion under the regulations, and the ALJ was, therefore, under no obligation to grant it a specific weight.  *See Moon v. Comm'r of Soc. Sec.*, No. 8:12-cv-02911-T, 2014 WL 548110, at *2 (M.D. Fla. Feb. 11, 2014) (finding that the ALJ need not give a particular weight to a statement that does not constitute a medical opinion).  Moreover, even if the statement were considered a medical

opinion, the Court finds the lack of specificity supports affording it no weight, despite that it was written by a treating source.

The ALJ also afforded limited weight to the opinions of Dr. Wynn and Dr. Krasner, both of whom are treating sources and opined that Plaintiff was restricted to "no pushing, pulling, and lifting more than 10 pounds with no prolonged sitting, standing, or walking." (Tr. at 22). More specifically, the ALJ found the opinions to be unsupported by "the evidence as a whole, including the physical examination findings," citing a specific record as an example. (*Id.* (citing Tr. at 1667-68)). Upon review, the Court finds the ALJ's determination as to these opinions to be supported by substantial evidence. As Plaintiff acknowledges, (*see* Doc. 22 at 21-22), the record cited by the ALJ shows normal findings on examination, (*see* Tr. at 1667-68). Specifically, the examination revealed, *inter alia*, that Plaintiff had full range of motion in her upper and lower extremities, full strength in all upper extremity tests, normal station, and no weakness in her lower extremities. (*See id.*). Additionally, the ALJ cited to this record as an example, as evinced by his use of the preface "i.e." (*See id.* at 22). Other evidence in the record shows similar findings to those cited by the ALJ here. (*See, e.g.*, Tr. at 561, 1112-13, 1269-70, 1672-73). These normal objective findings are facially inconsistent with the extreme limitations opined by Dr. Wynn and Dr. Krasner. Such inconsistencies constitute good cause for giving the opinions less than controlling weight. *See Phillips*, 357 F.3d at 1240-41 (citation omitted).

Although Plaintiff asserts that other evidence—both in the specific record cited by the ALJ and elsewhere in the record—undermines the ALJ's decision to afford limited weight to these opinions, it is not for the Court to reweigh the evidence or decide the facts anew. *Winschel*, 631 F.3d at 1178. Instead, the Court must determine if the relevant evidence adequately supports the ALJ's conclusion. *Id.* Thus, even if the evidence preponderates against the Commissioner's findings, a court must affirm the decision if it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). As noted above, the ALJ here cited specific evidence to support his finding that the opined limitations are unsupported by the evidence of record. Accordingly, the Court finds the assessment of Dr. Wynn's and Dr. Krasner's opinions to be supported by substantial evidence.

As to Dr. Krasner's remaining opinions, the ALJ considered each individually and afforded them either limited or no weight. (Tr. at 20-22). In assessing whether these findings are supported by substantial evidence, the Court begins by considering those afforded limited weight.

First, the ALJ gave limited weight to Dr. Krasner's opinion that Plaintiff "would be out of work from May 20, 2015, through August 2, 2015, is unable to work due to pain when having a flare, and would require good ergonomics and the freedom to move around during the workday once she returns to work," (*id.* at 20-21 (citation omitted)), because the weight of the evidence, including improvement with physical therapy, did not support the opinion, (*id.* (citing, as an example, Tr. at 1155)).

24

Second, the ALJ gave limited weight to Dr. Krasner's opinion that Plaintiff should "work part-time, no more than 25 hours per week with no lifting, bending, squatting, pulling/pushing, lifting heavy items, stairs, extended sitting or standing, no extended driving or traveling, and needs the flexibility to accommodate her condition as needed," (*id.* at 21 (citing Tr. at 860)), because "the August 2015 x-ray that showed mild degenerative changes and the March 2016 consultative examination findings support finding [Plaintiff wa]s not as limited as Dr. Krasner opined," (*id.* (citing Tr. at 826, 911-12)).

Third, the ALJ gave limited weight to Dr. Krasner's opinion that Plaintiff can sit for "1 hour at a time and 4 hours total, stand[ for] 30 minutes at a time and 2 hours total, and walk[] for 30 minutes at a time and 2 hours total," can lift and carry 10 pounds bilaterally, and cannot bend, kneel or crouch, (*id.* (citing Tr. at 869-70)), because "the findings of normal extremity strength do not support the lifting/carrying and postural limitations," (*id.* (citing Tr. at 912, 1113, 1205, 1541, 1667-68)).

Fourth, the ALJ gave limited weight to Dr. Krasner's opinions that Plaintiff: (1) must "avoid excessive bending, squatting, sitting, and standing, should avoid lifting, pushing, or pulling anything over 20 pounds, and should be allowed to sit in an adult-sized chair whenever needed," (*id.* (citing Tr. at 929)); (2) is limited to one hour of sitting, standing, and walking, (*id.* (citing Tr. at 1159-62)); (3) is "unable to work for 6 to 9 months and cannot sit or stand up to 4 hours," (*id.* (citing Tr. at 1288-89); and (4) is not able to "walk more than 200 feet due to pain and uses a cane," (*id.*

(citing Tr. at 1545)), because "the evidence, including the claimant's improvement with physical therapy (i.e. [Tr. at 1155]) and surgery ([Tr. at 958, 1113]) and the physical examination findings (i.e. [Tr. at 1540-41, 1550, 1667-68]) do not support Dr. Krasner's restrictive limitations," (*id.* at 21-22).

Finally, the ALJ gave limited weight to Dr. Krasner's opinions that Plaintiff can "lift and carry 20 pounds occasionally and 10 pounds frequently, sit for 8 hours with breaks in between, stand for 1 hour, and walk for 1 hour, . . . cannot ambulate without a cane, can occasionally reach overhead and in all other directions bilaterally, [can] never climb stairs, ramps, ladders or scaffolds, balance, stoop, kneel, crouch, or crawl," and "could have no exposure to unprotected heights, moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, vibrations, and occasionally operator a motor vehicle," (*id.* at 22 (citing Tr. at 1832-37)),[2] because "the evidence, including the improvement with physical therapy and release surgery, as well as the examination findings, do not support such restrictive limitations," (*id.* at 22 (citing, as examples, Tr. at 958, 1113, 1155, 1540-41, 1550, 1667-68)).

Upon review, the Court finds the ALJ's findings to be supported by substantial evidence.  Indeed, the ALJ cited specific records in support of his findings.  Each record cited shows that Plaintiff improved with physical therapy and surgery, (*id.* at

---

[2]  The ALJ erroneously cited to exhibit 63F as opposed to 64F.  (*See* Tr. at 22).  The Court finds this to be a harmless error, *see Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)), and cites to the proper record.

958, 1155), had only mild showings on her x-rays, (*id.* at 826), and exhibits full or near full range of motion and strength in upper and lower extremities, (*id.* at 911-12, 1113, 1205, 1541, 1667-68).  Additionally, many of those records were cited as examples, and a review of the record as a whole demonstrates that additional records reflect similar findings.  (*See, e.g.*, *id.* at 561, 1269-70, 1672-73).  Thus, by determining that the opinions were not supported by the evidence, the ALJ articulated good cause for giving the opinions less than controlling weight.  *See Phillips*, 357 F.3d at 1240-41 (citation omitted).

Turning to the opinions that the ALJ found to be entitled to no weight, the Court likewise finds the determinations to be supported by substantial evidence.  First, the ALJ found Dr. Krasner's opinion that Plaintiff should not return to work for the State of Delaware to be entitled to no weight because "it appear[ed] to be based on [Plaintiff's] self-report[ing] ([Tr. at 849]), does not provide any functional limitations, and makes a finding on an issue reserved to the Commissioner."  (*Id.* at 21).  Second, the ALJ found Dr. Krasner's opinion that Plaintiff's "restrictions are psychological, not physical, and she is not able to return to work ([Tr. at 875])" to be entitled to no weight because the opinion contradicted opinions by Dr. Krasner and is an opinion on an issue reserved to the Commissioner.  (*Id.*).

Upon review, the Court finds the ALJ's determinations to be supported by substantial evidence.  First, as noted by the ALJ, whether a claimant is disabled is an issue reserved for the Commissioner.  20 C.F.R. § 404.1527(d)(1).  As a result, to the extent the statements opine as to Plaintiff's ability to return to work, neither

constitutes a medical opinion, and the ALJ is, therefore, under no obligation to weigh the opinions or afford them a particular weight. *See Moon*, 2014 WL 548110, at *2 (finding that the ALJ need not give a particular weight to a statement that does not constitute a medical opinion). Nor did the ALJ reject the statements outright or otherwise ignore them. (*See* Tr. at 21). Rather, the ALJ properly considered the statements and provided specific reasons for finding that they were entitled to no weight—*i.e.*, that one statement was based on Plaintiff's self-reporting and that the other contradicted other opinions by the same doctor. Both reasons are supported by substantial evidence and speak to one of the factors specified in 20 C.F.R. § 404.1527(c)—*i.e.*, the supportability of the opinions. Accordingly, the Court finds that the ALJ did not err in determining that these statements are entitled to no weight.

Although Plaintiff asserts that other evidence—both in the records cited by the ALJ and elsewhere in the record—undermines the ALJ's decision to afford limited or no weight to these opinions, it is not for the Court to reweigh the evidence or decide the facts anew. *Winschel*, 631 F.3d at 1178. Thus, even if the evidence preponderates against the Commissioner's findings, a court must affirm the decision if it is supported by substantial evidence. *Crawford*, 363 F.3d at 1158. Upon review of the records cited by the ALJ and the record as a whole, the Court finds the assessment of Dr. Krasner's opinions to be supported by substantial evidence.

To the extent Plaintiff asserts that the ALJ did not properly assess Dr. Krasner's opinions as those of a treating source, (*see* Doc. 22 at 17-18), the Court is

not persuaded. Rather, when assessing whether Plaintiff met a listing at step three, the ALJ specifically noted that Dr. Krasner was Plaintiff's family medicine physician. (Tr. at 16). The ALJ also identified one of Dr. Krasner's opinions as being part of "a Treating Source Statement." (*Id.* at 21). Accordingly, the Court finds that the ALJ was aware of Dr. Krasner's status as a treating source, but nonetheless determined that good cause existed to afford his opinions less than controlling weight. (*See id.* at 16, 20-22).

Finally, the ALJ determined that Dr. Lifrak's opinion—that Plaintiff "is able to walk indoors and outdoors, sit for a total period of up to 6 hours out of an 8-hour day, stand for a total period of up to 6 hours out of an 8-hour day, and lift weights up to 10 pounds with either hand on a regular basis"—was entitled to limited weight. (*Id.* at 22 (citing Tr. at 913)). In support, the ALJ determined that "the weight of the evidence, including the mostly normal strength findings, do[es] not support limiting lifting and carrying to 10 pounds bilaterally," (*id.* (citing, as examples, Tr. at 1386, 1667), but the ALJ nonetheless noted that the RFC contained greater limitations on sitting, standing, and walking, (*id.* (citation omitted)).

Upon review, the Court finds that the ALJ's determination is supported by substantial evidence. As to the opined limitation in Plaintiff's ability to lift, the Court likewise finds no error.[3] First, Dr. Lifrak is not a treating source, and,

---

[3] To the extent Plaintiff attempts to challenge the ALJ's assessment as it relates to the portion of the opinion related to Plaintiff's ability to sit, stand, and walk, any error would not require remand because the RFC found that Plaintiff had greater limitations than opined. (*Compare* Tr. at 913, *with* Tr. at 17). Thus, any error related

therefore, any opinion by Dr. Lifrak is not entitled to a specific weight.  *See Stollenwerk v. Astrue*, No. 2:11-cv-504-FtM-JES, 2012 WL 2116118, at *5 (M.D. Fla. May 17, 2012), *report and recommendation adopted*, 2012 WL 2116141 (M.D. Fla. June 11, 2012) (citing, *inter alia*, 20 C.F.R. §§ 404.1502, 404.1527(d)(1), (2) to support the proposition that an opinion by a non-treating physician was not entitled to any specific deference).  Moreover, the records cited by the ALJ support his finding.  Specifically, the records show normal strength and tone in both upper extremities.  (*See* Tr. at 1386, 1667).  Additionally, the ALJ cited to this record as an example.  (*See id.* at 22).  Other evidence in the record shows similar findings to those cited by the ALJ here.  (*See, e.g.*, *id.* at 561, 1112-13, 1269-70, 1672-73).  These normal objective findings are facially inconsistent with the extreme limitations opined by Dr. Lifrak.  Given that the opinion is not supported by the objective evidence of record, the ALJ did not err in affording the opinion limited weight.

Although Plaintiff asserts that other evidence—both in the specific record cited by the ALJ and elsewhere in the record—undermines the ALJ's decision to afford limited weight to these opinions, it is not for the Court to reweigh the evidence or decide the facts anew.  *Winschel*, 631 F.3d at 1178.  Thus, even if the evidence preponderates against the Commissioner's findings, a court must affirm the decision if it is supported by substantial evidence.  *Crawford*, 363 F.3d at 1158.  As noted

---

to the ALJ's assessment of that portion of the opinion would be harmless.  *See Denomme*, 518 F. App'x at 877  (citing *Diorio*, 721 F.2d at 728).

above, the ALJ here provided specific records to support his finding. Thus, the Court finds the assessment of Dr. Lifrak's opinions to be supported by substantial evidence.

In sum, the Court finds no error in the ALJ's assessment of the opinion evidence of record. As a result, the Court finds that the ALJ's decision is supported by substantial evidence and, therefore, due to be affirmed.

**VI.    Conclusion**

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the Court **ORDERS** that:

1.    The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.    The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Tampa, Florida on September 6, 2022.

Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record

Unrepresented Parties